**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| JOE FLETCHER, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:21-CV-00173-SDJ- |
| v. | § | CAN |
| | § | |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff brings this appeal for judicial review of the final decision of the Commissioner of

Social Security ("Commissioner") pursuant to 42 U.S.C. § 405(g), denying his claim for benefits.

After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the

administrative record, the Court recommends that the Commissioner's decision be **AFFIRMED**.

**BACKGROUND**

**I.     PROCEDURAL HISTORY OF THE CASE**

On February 19, 2018, Plaintiff Joe Fletcher ("Plaintiff") filed applications for disability

insurance benefits and supplemental security income under Title II and Title XVI of the Social

Security Act [TR 200-210].  Plaintiff alleges an onset of disability date of January 15, 2018

[TR 15].[1]  On April 26, 2018, the claim was initially denied [TR 97], and upon reconsideration on

September 11, 2018 [TR 108], Plaintiff's application was again denied. Plaintiff requested an

administrative hearing ("Hearing") [TR 135], which was held before an Administrative Law Judge

("ALJ") on October 8, 2019 [TR 45].  At the Hearing, Plaintiff was represented by counsel and

the ALJ heard testimony from Plaintiff, Plaintiff's wife, Bridget Fletcher, and a vocational expert

---

[1] Per Plaintiff's testimony, this date coincides with a single-vehicle accident Plaintiff was in after being off all insulin for five days [TR 57].

("VE") [TR 54-89]. On May 21, 2020, the ALJ issued an unfavorable decision denying Plaintiff's applications [TR 12-24]. On July 23, 2020, Plaintiff requested review of the ALJ's decision by the Appeals Council [TR 184-190]. The Appeals Council denied Plaintiff's request on January 6, 2021, making the decision of the ALJ the final decision of the Commissioner [TR 1-4]. On March 2, 2021, Plaintiff filed the instant suit [Dkt. 1]. On September 1, 2021, the Administrative Record was received from the Social Security Administration [Dkt. 16]. Plaintiff filed his opening brief on October 1, 2021 [Dkt. 17], Commissioner filed its Brief in Support of the Commissioner's Decision on November 30, 2021 [Dkts. 18, 19],[2] and Plaintiff filed his Reply Brief on December 8, 2021 [Dkt. 20].

## II.    STATEMENT OF RELEVANT FACTS

### 1. Age, Education, and Work Experience

Plaintiff was born on January 4, 1982, making him thirty-six (36) years of age at the time of alleged onset of disability [TR 100]. His date last insured is September 30, 2022 [TR 17]. Plaintiff's age classification at all relevant times was that of a "younger person." *See* 20 C.F.R. § 404.1563(c). Plaintiff completed the tenth grade [TR 56] and has past work experience working at several automobile repair shops [TR 58, 250-257]. Plaintiff has not engaged in substantial gainful activity since January 15, 2018, the alleged date of onset [TR 17].

### 2. Relevant Medical Records

Plaintiff alleged and the ALJ found Plaintiff has the severe impairments of diabetes mellitus I with diabetic gastroparesis, status post-surgical placement of gastric simulator, and gastric and duodenal ulcers [TR 17]. Relevant to the issues presented by Plaintiff's appeal are

---

[2] Commissioner first filed its Brief in Support of the Commissioner's Decision on November 30, 2021, signed by Nicholas J. Ganeji [Dkt. 18 at 15]. Commissioner refiled its Brief on December 1, 2021 signed by Brit Featherson. [Dkt. 19 at 15]. The substance of the filings is identical.

Plaintiff's emergency room records and the medical opinions and evaluations of the office of Dr. Robert Hernandez, including those of Dr. Robert Hernandez ('Dr. Hernandez") and Nurse Practitioner Brown ("NP Brown"), treating physicians Dr. Larry Whitfield ("Dr. Whitfield"), Dr. Siddiqui, Dr. Jenna Wishnew ("Dr. Wishnew"), and state agency medical consultants Dr. Patty. Rowley ("Dr. Rowley"), and Dr. Scott Spoor ("Dr. Spoor").

### a. Emergency Room Records

Between January 18, 2018, through October 25, 2018, Plaintiff visited the emergency room ("ER") twenty-seven times [TR 453, 1560]. Plaintiff's emergency room visits lack a uniform basis for treatment. One of the ER Physicians, Dr. Jerry Bennett, noted that "Pt has been seen at this facility multiple times for complaints of pain to different areas [TR 807].

Many of Plaintiff's ER visits are related to his diabetes or gastroparesis including visits for uncontrolled blood sugar, hyperglycemia, body aches, headaches, nausea, vomiting, diarrhea, bloody stool, and abdominal pain [TR 299, 310, 395, 401, 426, 453, 708, 730, 776, 942, 955, 1086, 1102, 1128, 1257, 1280, 1298, 1314, 1514, 1560]. Plaintiff was admitted and stayed overnight at the hospital on three occasions for treatment related to his diabetes and gastroparesis [TR 976, 1033, 1561]. Plaintiff's date of onset relates to one of these overnight stays resulting from a single-vehicle accident Plaintiff was involved in; Plaintiff ran off the road after taking no insulin for five days [TR 57]. Plaintiff's emergency room records reflect that he received a new insulin pump in May 2018 [TR 1298] and as of June 2018 Plaintiff reported that his diabetes was being treated with an insulin pump [TR 1257].[3]

Plaintiff visited the emergency room numerous times seeking treatment for other conditions as well, including following a Go-Kart accident, altered consciousness due to

---

[3] The Commissioner contends that after Plaintiff received his insulin pump his subsequent visits to the ER, other than one, did not relate to fluctuating blood sugar levels, but instead stem from abdominal complaints [Dkt. 19 at 10].

intoxication, a runny nose, left elbow pain, back pain, chest pain, and panic attacks [TR 304-306, 320, 807, 730, 786, 1340 1358-65, 1380, 1491]. During one or more of his 2018 emergency room visits, Plaintiff's medical records reflect a positive test for or concern about opiates [TR 1371].[4]

### b. Treating Physicians Dr. Hernandez, Dr. Whitfield, Dr. Siddiqui, and Dr. Wishnew

Plaintiff treated with the office of Dr. Hernandez from April 11, 2018, to January 16, 2019 [TR 1601-1679]. Plaintiff saw both NP Brown and/or Dr. Hernandez during his visits. A review of Plaintiff's records from this time reflect he was treating with an endocrinologist for his diabetes, that he was not wearing his insulin pump consistently, and that he reported his sugar levels were not controlled [TR 1608-1609]. NP Brown advised Plaintiff to follow up with his endocrinologist for diabetes care. Plaintiff's records also include a note that he suffers from or has self-reported an opiate dependency [TR 1605]. During one visit, Dr. Hernandez reported that Plaintiff was "healthy appearing . . . no pain . . . and signs of discomfort and under no acute distress; notwithstanding that Plaintiff was hunched over a trash can during the visit [TR 1621]. On October 9, 2018, Dr. Hernandez completed a check-the-box Physician's Statement for Plaintiff's request for benefits from Texas Health and Human Services Commission [TR 1670]. In this Physician's Statement, Dr. Hernandez stated that Plaintiff had diabetes mellitus, gastroparesis and anxiety and "[d]ue to [Plaintiff's] episodes and flair ups, he is unable to be in any working

---

[4] To Plaintiff's counsel's credit and in full compliance with his ethical obligations, this fact is disclosed in Plaintiff's opening brief. A complete review of Plaintiff's medical records reveals numerous instances regarding the possibility that Plaintiff has an opiate dependency and/or is engaging in drug seeking behavior, including Dr. An Ho's notes following Plaintiff's emergency room visit on March 21, 2018. Dr Ho said that "[P]atient is tested for drugs of abuse and comes up positive for opiates which in turn causes me to check the Texas pharmacy aware site for the patients name he comes back listed as a possible pharmacy shopper and drug seeker with at least 5 prescriptions 5 different locations this month. Patient is confronted with this information and he assures me that he is not seeking pain medication I let the patient know that despite his intentions he is still been listed on their site as a seeker and will not be receiving any pain medication the patient is told that this going from medical order to ER to address his medical concerns is not an appropriate way to achieve his health goes if that is in fact what he is wanting I suspect that he is in fact drug seeking using his diabetes to that end. The patient has very theatric affect to him does not appear to be an ill patient though he presents as one every time he is in the ER" [TR 1365].

environment" [TR 1671].  Both the ALJ and Plaintiff's own counsel agreed at hearing that Dr. Hernandez assessment is "pretty vague" [TR 52].

Plaintiff's first endocrinologist was Dr. Larry Whitfield [TR 1726-1759].  At hearing, Plaintiff's counsel advised that Dr. Whitfield's records had inadvertently not yet been requested [TR 48], the ALJ permitted entry of the records after hearing.  A limited number of treatment records appear in the record from Dr. Whitfield beginning in 2015 and continuing through July 2018 and no physician's statement or assessment is offered by Dr. Whitfield.  In January 2018, Dr. Whitfield's records reflect that Plaintiff had been doing well "for a while" with respect to his diabetes but then Plaintiff was off all insulin for 5 days resulting in a car crash and visit to the emergency room [TR 1752].  Plaintiff also saw another endocrinologist Dr. Siddiqui for a period in 2018 [TR 1014-1028].  Dr. Siddiqui's last record reflects that since being on continuous subcutaneous insulin infusion (CSII) Plaintiff felt better and Dr. Siddiqui reported he was much improved [TR 1021-1022].  No assessment is offered by Dr. Siddiqui.

Plaintiff was also treated by Dr. Jenna Wishnew [TR 1425, 1682, 1684, 1688, 1691, 1693, 1695, 1698, 1699, 1701, 1704].  Dr. Wishnew first saw Plaintiff on October 30, 2018, following his complaints of nausea [TR 1425].  Dr. Wishnew diagnosed Plaintiff with gastroparesis [TR 1426].  On November 6, 2018, Plaintiff visited Dr. Wishnew complaining about his abdominal pain and scheduled surgery with Dr. Wishnew for a gastric stimulator implant [TR 1682].  On December 4, 2018, Plaintiff visited Dr. Wishew complaining of nausea and abdominal pain and Dr. Wishnew prescribed him anti-nausea medication and an anti-seizure medication [TR 1684].  On December 13, 2018, Dr. Wishnew performed the gastric implant surgery on the Plaintiff [TR 1687].  On December 21, 2018, Plaintiff visited Dr. Wishnew complaining of pain following the gastric implant surgery and Dr. Wishnew recommend Plaintiff continue the anti-seizure

medication [TR 1688]. On January 4, 2019, Plaintiff told Dr. Wishnew that his symptoms slightly improved and Dr. Wishnew adjusted the settings on his gastric simulator [TR 1691]. On January 22, 2019, Plaintiff visited Dr. Wishnew complaining of stomach pain and Dr. Wishnew adjusted the gastric stimulator settings [TR 1693]. On February 14, 2019, Plaintiff saw Dr. Wishnew and said his overall symptoms improved by 40% [TR 1695-1696]. On March 28, 2019, Plaintiff saw Dr Wishnew and said his overall symptoms improved by 50-60% [TR 1698]. On April 1, 2019, Plaintiff saw Dr. Wishnew complaining of increased pain and nausea and Dr. Wishnew adjusted the gastric stimulator settings [TR 1699]. On May 3, 2019, Plaintiff saw Dr. Wishnew and said his overall symptoms improved until a lawnmower shocked him [TR 1701]. Dr. Wishnew adjusted the gastric stimulator and prescribed an anti-inflammatory drug [TR 1702]. On May 31, 2019, Plaintiff reported to Dr. Wishnew that his symptoms had worsened [TR 1704]. Dr. Wishnew reported that she believed Plaintiff's symptoms had worsened because the gastric stimulator had been displaced and needed to be redone [TR 1704]. Plaintiff did not have a further gastric procedure; he alleges this is due to loss of his insurance and having already exhausted the cap on his indigent care [TR 50]. The May 31, 2019, visit was Plaintiff's last examination of record with Dr. Wishnew.

Notwithstanding, on August 29, 2019, Dr. Wishnew completed a Medical Source Statement for Plaintiff [TR 1709]. Dr. Wishnew reported that Plaintiff could stand/walk for up to 4 but less than 6 hours, sit for 8 or more hours, and needed complete freedom to rest frequently without restriction during the day [TR 1709]. At hearing, the ALJ advised Plaintiff's counsel Dr. Wishnew's statement "d[idn't] make much sense", the ALJ could not foresee assigning any weight to the opinion, and instructed counsel to get clarification of the assessment given internal conflicts in the assessment [TR 52, 88-89]. Plaintiff's counsel agreed certain statements in the

report were in conflict [TR 89].  On October 17, 2019, Dr. Wishnew completed another Medical Source Statement for Plaintiff [TR 1757].  No intervening examinations exist between the first and second statements; however, the findings between the two assessments significantly vary.  Dr. Wishnew reported in the second assessment that Plaintiff could stand/walk for 2 hours, sit for less than 2 hours, and needed to rest lying down for 4 hours during an 8-hour workday [TR 1757].

### c.  State Agency Medical Consultants - Dr. Rowley and Dr. Spoor

At the initial level, Dr. Patty Rowley, M.D., completed Plaintiff's disability determination that found severe impairment for diabetes mellitus [TR 94].  Dr. Rowley found Plaintiff's statements about the intensity, persistence, and functionally limiting effects of his stated symptoms were not substantiated by objective medical evidence [TR 94].  More specifically, Plaintiff's statements about his symptoms were only partially consistent with the total medical and non-medical evidence in the file [TR 95].  As to his RFC, Dr. Rowley found Plaintiff has exertional limitations for: lifting/carrying occasionally of 50 pounds, and frequently for 25 pounds; standing and walking with normal breaks about 6 hours in an 8-hour workday; and sitting for about 6 hours in an 8-hour workday with normal breaks [TR 95].  Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations [TR 95].  On reconsideration, Dr. Scott Spoor, M.D., considered the changes to Plaintiff's medical condition, specifically Plaintiff's blood sugar levels [TR 69].  Dr. Spoor ultimately reached the same conclusion as Dr. Rowley [TR 106].

### 3.  *Hearing Testimony*

### a.  Plaintiff's Testimony

On October 8, 2019, the ALJ held a Hearing ("Hearing") [TR 45-90].  At Hearing, the ALJ questioned Plaintiff, as did Plaintiff's attorney representative.  Plaintiff answered questions from the ALJ regarding his past work, his symptoms, and his limitations at work and in engaging in

daily life activities [TR 8-39].  Plaintiff was diagnosed with diabetes at age 13 and at the time of hearing he was 37 years old [TR 49, 55].  Plaintiff dropped at out of high school because he "just didn't want to go to school" [TR 57].  Relevant here, Plaintiff briefly described his past work as an automobile parts delivery driver, but he did not discuss the skills or demands required [TR 58]. The ALJ asked Plaintiff if he had problems retaining a job because of his diabetes and Plaintiff said "Yes" [TR 71].  The ALJ then asked Plaintiff "what kind of symptoms do you have from diabetes that you believe would interfere with you doing that type of work or other work?" Plaintiff said that he gets extremely high and extremely low blood sugars and then he said "I get a headache and I get to feeling sick" [TR 58].  Plaintiff explained that his gastroparesis causes an "[u]pset stomach, can't each, feeling full, vomiting after eating, and stomach cramps and pains" [TR 67]. Overall, Plaintiff had a negative outlook on his course of treatment for his gastroparesis because his gastric simulator stopped providing relief "At first month or two I felt some better, then [the symptoms] started going back downhill like symptoms before I had it done" [TR 68-69].  Plaintiff also had a negative outlook on his diabetes mellitus I treatment stating he still has problems controlling his high blood sugar [TR 66].  Plaintiff did however testify that his insulin pump was controlling his blood sugars until he could no longer get supplies for his pump due to loss of insurance in February or March [TR 59].  Plaintiff advised his indigent care insurance was working with him to get his supplies and he agreed that the insulin pump made a difference in his blood sugar levels and he had less problems when he had the pump [TR 61-66].  In response to questioning by his own lawyer, Plaintiff admitted that "when [his] insulin pump was working" he had "some, but not very many" days where he could not do normal activity all day long [TR 74].

### b. VE's Testimony

The ALJ posed a hypothetical to the VE; the ALJ instructed the VE for the hypothetical to

"assume no past work."

> Q      Ms. Jule, assume a younger individual age 37 and under with a limited tenth
> grade education. And for the purposes of the hypothetical assume no past work.
> Assume this individual can lift and carry up to ten pounds occasionally; stand and
> walk for two hour during an eight-hour workday; can sit continuously for one hour,
> then must have the freedom to stand and stretch at the workstation for up to three
> minutes before returning to a seated position. All right. Given those limitations is
> there any work existing in the national economy that such an individual could be
> expected to perform?
>
> A      Yes, ma'am. We have an order clerk food and beverage. This is DOT
> 209.567-014. This is a sedentary occupation, SVP: 2, U.S. 40,000. We have an
> addresser. This is DOT 209.587-010. This is a sedentary occupation, SVP: 2, U.S.
> 88,000. We have a document preparer. This is DOT 249.587-018. This is a
> sedentary occupation, SVP: 2, U.S. 45,000.

[TR 85-86]. The ALJ clarified that each of these jobs was clerical in nature, required less than a

high school education, and would allow a worker to stand for several minutes after an hour of

sitting [TR 86]. Plaintiff's attorney representative cross-examined the VE, adjusting the ALJ's

first hypothetical:

> Q      Ms. Jule, take the first hypothetical, add to it the necessity to take 20-
> minute rest breaks each hour allowing complete freedom to rest which would
> include laying down. Would the claimant be able to maintain employment?
>
> A      No.
>
> Q      If the claimant were, again, missing more than four days per month as a
> result of medical conditions would he be able to maintain any employment –
>
> A      No.
>
> Q      . . . [C]ompetitive employment? If the breaks were rather than 20 minutes
> per hour say, three times a week, he had a couple of hours due to medical
> conditions he couldn't stay on task and had to have that much time separately for
> a rest break would that all have the same impact on

ALJ    I don't think I understand. Three times a week he needed a 20-minute rest break?

ATTY  No, I'm sorry, Judge, three times a week for a couple of hou[rs]. In other words, if the claimant were having symptoms of gastroparesis or having an extremely low or high blood sugar where it required some time to recover, obviously he's going to be off task for some period of time based on his testimony.

ALJ    So the hypothetical is three work days of the week he would be off task --

ATTY  Off task for two hours.

ALJ    or resting for two hours each of those three days?

ATTY  Yes.

ALJ    Okay. I got it.

BY ATTORNEY:

Q    Yeah. Same impact on vocationally speaking?

A    Yes, I believe so.

Q    All right. No employment, correct?

A    Right.

[TR 87-88].

### III.    FINDINGS OF THE ALJ

#### 1.    *Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability.  20 C.F.R. § 404.1520.  First, a claimant who is engaged in substantial gainful employment at the time of her disability claim is not disabled.  *Id.* § 404.1520(b).  Second, the claimant is not disabled if her alleged impairment is not severe, without consideration of her residual functional capacity, age, education, or work experience.  *Id.* § 404.1520(c).  Third, if the alleged impairment is severe, the claimant is considered disabled if her impairment corresponds to

a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Id.* § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if she can perform her past work based on her residual functional capacity. *Id.* § 404.1520(e). Finally, a claimant who cannot return to her past work is not disabled if she has the residual functional capacity to engage in work available in the national economy. *Id.* § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability, and at the last step, the burden shifts to the Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

### 2. *ALJ's Disability Determination*

After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluation [TR 10-17]. The ALJ found Plaintiff met the insured status requirements through September 30, 2022 [TR 17]. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 15, 2018, the date of alleged onset [TR 12]. At step two, the ALJ found Plaintiff has the following severe impairments: diabetes mellitus I with diabetic gastroparesis, status post-surgical placement of a gastric simulator, and gastric and duodental ulcers [TR 17]. The ALJ found Plaintiff did not have a "severe" mental impairment [TR 18]. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526) [TR 9]. At step four, the ALJ determined:

> The claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except he can sit continuously for 1 hour and then he must have the freedom to stand/stretch for up to 3 minutes before returning to a seated position.

[TR 19].  Continuing the step four analysis, the ALJ "applied the expedited process provided in 20 CFR 404.1520(h) & 416.920(h), deferred any finding regarding the younger claimant's ability to perform past relevant work, and proceeded to Step 5 of the sequential evaluation of disability" [TR 23]. At step five, the ALJ found considering Plaintiff's age, education, work experience, and residual functional capacity, that there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, specifically, order clerk (food and beverage), addresser and document preparer [TR 24].  Based on this determination, the ALJ concluded Plaintiff was not disabled from January 15, 2018, through the date of the ALJ's decision, May 21, 2020 [TR 26].

### STANDARD OF REVIEW

In an appeal under § 405(g), a court "reviews a Commissioner's denial of social security disability benefits 'only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Webster v. Kijakazi*, No. 20-60856, 2021 WL 5563333, at *1 (5th Cir. Nov. 29, 2021) (quoting *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (quotation marks and citation omitted)); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), *cert denied*, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983).  Substantial evidence "need not be a preponderance." *Webster*, 2021 WL 5563333, at *1 (quoting *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012)). Conflicts in the evidence are resolved by the ALJ; the Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner, though it will scrutinize the record to determine if evidence is present.  *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995); *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment.  42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process.  20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff argues two issues on appeal: (1) whether remand is warranted because the ALJ failed to make a specific finding regarding Plaintiff's ability to sustain employment on a regular, continuing basis; and (2) whether the ALJ's written decision fails to explain any of the "special technique" findings precluding judicial review [Dkt. 17 at 2].

### The ALJ Did Not Commit a Legal Error by Failing to Make an Independent Finding Regarding Whether Plaintiff Could Sustain Employment on a Regular, Continuing Basis

Plaintiff urges his twenty-seven emergency room visits and erratic glucose control triggered an affirmative duty by the ALJ to make an express finding as to his ability to hold a job for a "significant period of time."  *Singletary v. Bowen*, 798 F.2d 818, 821 (5th Cir. 1986).  Plaintiff contends that where a condition "waxes and wanes" like his diabetes the Fifth Circuit has "required an ALJ to issue an explicit finding regarding the claimant's ability to maintain employment (i.e., a '*Singletary* finding')" [Dkt. 17 at 10].  The Commissioner argues, in response, that subsequent Fifth Circuit opinion have made clear that "there is no formalistic requirement for a separate finding addressing a claimaint's ability to maintain employment" absent proof of "(1) intermittently recurring symptoms, (2) that exist at a disabling level of intensity, and (3) the finder of fact did not adequately address this evidence in the context of the claimant's ability to work on a regular and continuing basis" [Dkt. 19 at 6-8].  The Commissioner contends these requisites cannot be met here because "[Plaintiff's] emergency room visits over the course of ten

months in 2018 lack[ed] a uniform basis of treatment", the discrete five-month period during which Plaintiff did experience blood sugar fluctuations due to the lack of an insulin pump cannot meet the duration requirement, and because the ALJ exhaustively addressed Plaintiff's medical evidence in the determination [Dkt. 19 at 9-12].

In *Singletary*, the Fifth Circuit held that an ALJ must make an explicit determination concerning whether a claimant can both "obtain *and maintain*" employment when the evidence compels such a finding. *Singletary*, 798 F.2d at 823 (emphasis added). Such a finding must "be supported by more than a claimant's personal history; it must also be supported by medical evidence." *Id.* at 822. However, as Commissioner contends, subsequent Fifth Circuit opinions clarify the ALJ need only make this finding when a claimant's impairment, by nature, "waxes and wanes in its manifestation of disabling symptoms." *Frank v. Barnhart*, 326 F.3d 618, 619 (5th Cir. 2003) (discussing *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002)). "[I]n order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time." *Id.* A claimant's allegation that a condition causes "good days and bad days" cannot by itself compel an explicit finding. *See Perez v. Barnhart*, 415 F.3d 457, 465 (5th Cir. 2005). Without evidence of such waxing and waning manifestation, "the claimant's ability to maintain employment is subsumed in the RFC determination." *Id.* Finally, even if the evidence compels an express finding of the claimant's ability to hold a job, the ALJ need not refer to any particular case as long as the decision addresses "the critical issue of whether Plaintiff was able to maintain sustained employment during the relevant period." *Huet v. Astrue*, 375 F. App'x 373, 376 (5th Cir. 2010).[5]

---

[5] In *Frank*, the Fifth Circuit offered an example of a condition that would require a *Singletary* finding, "[plaintiff's] degenerative disc disease prevented her from maintaining employment because every number of weeks she lost

Plaintiff cites his twenty-seven ER visits from January 2018 to October 2018 as evidence that the ALJ needed to issue a specific finding about whether he could maintain employment [Dkt. 20, at 3]. To support this proposition, Plaintiff cites both *Johnson v. Colvin* and *Tammy M. v. Barnhill*. However, the medical record in Plaintiff's case is factually disparate from these cases. In *Johnson*, Plaintiff was hospitalized on eight separate occasions for a total of twenty-one days and received numerous blood transfusions for kidney failure. *Johnson v. Colvin*, No. 3:14-CV-04213-G, 2016 WL 791291, * at 5 (N.D. Tex. Feb. 8, 2016), *report and recommendation adopted*, No. 3:14-CV-4213-G (BK), 2016 WL 775675 (N.D. Tex. Feb. 29, 2016). Similarly, in *Tammy M.*, the Plaintiff was hospitalized on least 12 separate occasions, spent a total of 100 days in the hospital, and stayed between two and twenty-nine days at a time. *Tammy M. v. Berryhill*, No. 3:18-CV-1659-K (BH), 2019 WL 2107564 (N.D. Tex. Apr. 24, 2019), *report and recommendation adopted sub nom. McCann v. Berryhill*, No. 3:18-CV-1659-K, 2019 WL 2103687 (N.D. Tex. May 14, 2019). In both cases, the extensive amount of time spent hospitalized was found to call for a

---

movement in her legs." *Frank*, 326 F.3d at 62. Following *Frank*, the Fifth Circuit courts have varied as to what medical evidence required an ALJ to make a *Singletary* finding. *Perez v. Barnhart* 415 F.3d 457, 465 (5th Cir. 2005) (finding evidence offered by plaintiff's doctor about plaintiff's waxing and waning condition was insufficient to require a Singletary finding because "[the doctor] never conducted any form of clinical evaluation on [plaintiff], for example, an MRI, X-ray, blood test, or CT scan"); *Thomas v. Berryhill*, No. 4:17-CV-2031, 2019 WL 691026, at *5 (S.D. Tex. Jan. 30, 2019), *report and recommendation adopted sub nom. Thomas v. Comm'r of Soc. Sec.*, No. 4:17-CV-2031, 2019 WL 669900 (S.D. Tex. Feb. 15, 2019) (finding that plaintiff's hospitalization for cyclic vomiting syndrome over a seven year period and the agency's consultative medical expert testimony that plaintiff would experience "3 to 4 episodes a year" was sufficient evidence to require a *Singletary* finding); *Darby v. U.S. Comm'r, Soc. Sec. Admin.*, No. 6:19-CV-01073, 2020 WL 4578957, * at 9 (W.D. La. July 17, 2020), *report and recommendation adopted*, No. 6:19-CV-01073, 2020 WL 4576524 (W.D. La. Aug. 7, 2020) (finding that ALJ needed to issue *Singletary* finding when Plaintiff had four separate hospitalizations related to her bipolar disorder over two and a half years); *Isiaka v. Kijakazi*, No. 4:20-CV-2350, 2022 U.S. Dist. LEXIS 65996, *at 9 (S.D. Tex. Mar. 31, 2022) (case only available on Lexis, finding that ALJ required to make a Singletary finding because Plaintiff's ulcerative colitis "was a severe disease known to cause potentially debilitating flair ups" and Plaintiff was hospitalized for a week due to her condition); *Coscarelli v. Saul*, No. SA-19-CA-1219-XR, 2021 WL 8053621, * at 12 (W.D. Tex. Jan. 29, 2021) (finding that the plaintiff who suffered blurry vision related to her diabetes "failed to identify evidence that shows her conditions, even at their apex, imposed disabling symptoms"); *Pierre v. Comm'r of Soc. Sec.*, No. 6:20-CV-01079, 2022 WL 292789, at * 7 (W.D. La. Jan. 13, 2022), *report and recommendation adopted sub nom. Pierre v. US Comm'r Soc. Sec. Admin.*, No. CV 20-01079, 2022 WL 289974 (W.D. La. Jan. 31, 2022) (finding that ALJ did not need to issue *Singletary* finding  because "there [was] no objective medical evidence in the record showing that the claimant was experiencing specific and disabling functional limitations related to the impairment in question, beyond the time that would ordinarily be expected for surgical recovery.").

*Singletary* finding. *Johnson*, 2016 WL 791291, * at 5; *Tammy M,* 2019 WL 2107564, * at 13-14. Here, the record reflects that most of Plaintiff's ER visits lasted the span of a few hours and many were not related to the conditions alleged in his applications for benefits [TR 302, 306 314, 320, 401, 429, 716, 751, 781, 807, 951, 1089, 1102, 1134, 1271, 1293, 1305, 1314, 1340, 1358, 1491, 1514]. Indeed, Plaintiff's hospital visits during 2018 "lacked a uniform basis of treatment" [Dkt. 19, at 10]. Specifically, on nine out of the twenty-seven occasions Plaintiff visited the hospital seeking treatment for back pain, left elbow pain, chest pain, and abdominal pain after eating chili covered hot dogs—all symptoms unrelated to his diabetes mellitus I diagnosis [TR 304-306, 320, 807, 730, 786, 942, 1340, 1358-65, 1380, 1491].[6] Additionally, the bulk of Plaintiff's hospital visits occurred during a time he admittedly failed to wear or use an insulin pump [TR 299, 310, 395, 426, 776, 1128, 1257, 1298, 1314, 1514 1752]. After Plaintiff began wearing an insulin pump, his diabetes remained under control and his subsequent ER visits, were all with one exception, for abdominal pain [TR 59-61, 1033, 1086, 1102, 1257, 1280, 1561]. Further to that point, while in the ER, it was noted "patient has a very theatric affect to him and does not appear to be an ill patient though he presents as one every time he is in the ER. Patient is warned against this activity and is educated on use of a food band blood sugar diary to follow-up with primary care in with endocrinology" [TR 1365]. Plaintiff's records from his endocrinologists reflect Plaintiff had been doing well "for a while" when on an insulin pump. The totality of Plaintiff's medical record simply does not evidence the waxing and waning of symptoms requiring the ALJ to make an explicit finding that Plaintiff has the ability to maintain employment. *See Frank*, 326 F.3d at 619. Moreover, when a medical condition is controlled by medication, that

---

[6] Plaintiff also visited the emergency room on one occasion because police officers brought him there for medical treatment after they found him "behind the wheel of the car, slumped over with altered mental status and could not answer questions properly" [TR 786].

medical condition is not disabling. *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) (citations omitted) (where medication or treatment remedies or controls a medical impairment, such medical impairment is not disabling). The ALJ extensively addressed the medical evidence of record in the determination. The residual functioning capacity assessment, therefore, subsumes the determination that Plaintiff can maintain employment. *See Perez*, 326 F.3d at 619. This Court finds no error of law in the ALJ's failure to include a *Singletary* finding.

Plaintiff alternatively argues the Commissioner's denial of benefits was not supported by substantial evidence because the ALJ rejected Dr. Wishnew's medical opinion who reported Plaintiff would have four or more workplace absences per month [Dkt. 17, at 9]. The Commissioner argues in advancing this argument Plaintiff "relies on cases that address the prior regulatory framework for assessing medical opinion evidence" [Dkt. 19, at 12]. The Commissioner further contends the ALJ applied the correct rule for weighing and evaluating medical evidence and was free to discount the opinion [Dkt. 19, at 11]. The Court agrees. The ALJ applied the legal standard for assessing medical evidence for claims filed after March 27, 2017 [TR 22-23][7] There is no requirement that the ALJ adopt any single medical opinion in its entirety. *Dixon v. Comm'r, SSA*, No. 4:18-CV-634, 2019 WL 5875901, at *1 (E.D. Tex. Sept. 27, 2019) (finding that "[t]here has never been a requirement in the Fifth Circuit that an RFC precisely match an expert medical opinion); *D.J.M. v. Berryhill*, No. 18-cv-0193, 2019 WL 1601491, at *4 (W.D. La. 2019) ("Like a trial judge or jury, the ALJ may weigh the competing opinions, take into consideration all of the other evidence of record, and make a finding that may not be exactly the same as the opinion of any one medical source."); *McCamant v. Comm'r, SSA*, No. 4:20-CV-

_____

[7] Evidence is "inconsistent when it conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques." 20 C.F.R. § 416.920b(b).

00212-CAN, 2021 WL 3603462, at * 8 (E.D. Tex. Aug. 13, 2021) (finding that the ALJ is not required to incorporate limitations in the RFC that he or she did not finding to be supported by the record"). Any statements by Dr. Wishnew as to whether Plaintiff can work is opinion evidence, which "is inherently neither valuable nor persuasive to the issue of whether [claimant is] disabled." *See* 20 C.F.R. § 404.1520b(c). Furthermore, while Plaintiff argues Dr. Wishnew's opinions are consistent, a facial review of the assessments reflects that such statement is inaccurate. Certainly, the ALJ drew attention at Hearing to her concerns regarding Dr. Wishnew's initial assessment and then exhaustively explained why she found Dr. Wishnew's initial and second assessments unpersuasive and wholly inconsistent with each other and the longitudinal record:

> I also carefully reviewed Dr. Wishew's August 29, 2019, and October 17, 2019, Treating Physician's Clinical Assessment form opinions (Exhibits 17F & 21F). In her August 2019 form report, Dr. Wishew indicated that the claimant could stand/walk for up to 4 but less than 6 hours, sit for 8 or more hours, and needed complete freedom to rest frequently without restriction for more than 20 minutes per hour, i.e. more than 2 hours and 20 minutes during the workday (7 intervals of 20 minutes = 140 minutes or 2 hours 20 minute during an 8-hour workday) (Exhibit 17F). However, in her October 2019 form report, she opined that the claimant could stand/walk for less than 2 hours, sit for less than 2 hours, and needed rest lying down or reclining for 4 hours during an 8-hour workday (Exhibit 21F).

> I cannot reconcile the conflicts between Dr. Wishew's standing/walking, sitting, and resting assessments rendered less than two months apart. She did not examine the claimant between August 29, 2019, and October 17, 2019; in fact, her last examination report of record is dated in May 2019. She did not provide a cogent explanation for the changes in her standing/walking, sitting, and resting assessments or cite medical evidence from another source as a basis for the changes. The significant, unexplained inconsistencies in the doctor's critical assessments of the claimant's abilities to perform standing/walking, sitting, and resting undermine the persuasiveness of all of her opinions expressed in Exhibits 17F and Exhibit 21F (20 CFR 404,1520c(c)(2) & 416.920c(3)).

> Finally, Dr. Wishew provided no cogent rationale for her calculations that the claimant would likely miss work more than 4 days per month, leaving such opinion unsupported (20 CFR 404.1527(c)(3)).

[TR 22-23]. The ALJ determined the objective medical evidence does not support the severity of limitations in Dr. Wishnew's opinion evidence, and treating physicians are not afforded controlling weight under the new rule.[8] The ALJ's review of evidence demonstrates substantial compliance with the applicable regulations, and Plaintiff has not shown that the ALJ erred by rejecting Dr. Wishnew's assessment. *See Liguez v. Kijakazi*, No. 4:20-CV-02798, 2021 WL 4943321, at *9 (S.D. Tex. Aug. 11, 2021), *report and recommendation adopted sub nom. Liguez v. Comm'r of Soc. Sec.,* No. 4:20-CV-2798, 2021 WL 4941997 (S.D. Tex. Oct. 22, 2021) ("The ALJ discussed the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c."). Plaintiff's first point of error thus fails.

### The ALJ Properly Applied the Special Technique Required to Evaluate Mental Illness

In his second point of error, Plaintiff contends that the ALJ failed to apply the "special technique" required to evaluate mental illness [Dkt. 17, at 11-12]. Specifically, Plaintiff contends that the ALJ did not properly explain her findings about Plaintiff's anxiety and depression [Dkt. 17 at 11-12]. The Commissioner contends that "the ALJ applied a proper PRT" and "the ALJ identified the specific medical providers, mental health evidence, and clinical findings that supported the PRT findings on the same pages as the findings themselves" [Dkt. 19 at 13].

"Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the 'special technique.'" *Farrar v. Berryhill*, No. 6:18-CV-00536-JDL, 2020 WL 9936147, at *3 (E.D. Tex. Jan. 27, 2020). In evaluating mental disorders, the ALJ first considers whether a claimant has a medically

---

[8] "The Fifth Circuit has recognized that opinions of treating physicians are not entitled to considerable weight when they are brief and conclusory and lack explanatory notes or supporting objective tests and examinations. *Stephens v. Saul*, No. 3:20-CV-823-BH, 2020 WL 7122860, at *7 (N.D. Tex. Dec. 4, 2020) (citing *Heck v. Colvin*, 674 F. App'x 411, 415 (5th Cir. 2017); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011)). Here, the Medical Source Statement contains no information as to why the objective evidence supports the severity of the limitations indicated; rather, the form merely states the opinion is based on her MRI(s) [TR 420].

determinable mental impairment.  *Id*.  To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment."  *Id*. (citing *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(1); *Boyd v. Apfel,* 239 F.3d 698, 705 (5th Cir. 2001)).  "For most Listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A, B, and sometimes C, of the adult mental disorders contained in the Listings."  *Id*. (citing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. § 404.1520a(b)(2) & (c)).  "'Paragraph B' contains four broad functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace; and 4) episodes of decompensation."  *Id*. (citing 20 C.F.R. § 404.1520a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C).  The ALJ's decision must dictate pertinent findings based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described.  *Id*.; 20 C.F.R. § 404.1520a(e)(4).

Plaintiff argues that the ALJ erred in performing the special technique because she did not properly explain her findings [Dkt. 17, at 12].  If an ALJ did not issue a specific finding related to the four functional areas as required by 20 C.F.R. § 404.1520a(e)(4) or does not properly explain their findings, the reviewing court typically finds that the ALJ did not apply the special technique. *Whytus v. Astrue*, No. 3:07-CV-0182-D 2007 U.S. Dist. LEXIS 104677, at *12 (N.D. Tex. Aug. 13, 2007) (finding that the ALJ did not apply the special mental technique when the "ALJ's decision [did] not include specific findings related to the four functional areas"); *Farrar*, 2020 WL 9936147 * at 12 (E.D. Tex. Feb. 14, 2020) (finding that the ALJ did not apply the special mental technique required because "the ALJ's decision [did] not include specific findings related to the four functional areas); *Nyanna M. F. v. Kijakazi*, No. 3:20-CV-1673-BN, 2022 WL 581835, * at

4 (N.D. Tex. Feb. 25, 2022) (finding that the ALJ did not use the special technique because he did not cite, refer, or mention to a doctor's findings about Plaintiff).

Here, Plaintiff's argument fails because the ALJ did include both a specific finding related to the four functional areas and an explanation. The ALJ's opinion clearly issued a specific finding as to Plaintiff's degree of limitation in each of the four functional areas. The ALJ wrote:

> In the first functional area, understand, remember, or apply information, the claimant has mild limitation.
>
> In the next functional area of interact with others, the claimant has mild limitation.
>
> In the third functional area, concentrate, persist, or maintain pace, the claimant has mild limitation.
>
> Finally, in the area of adapt and manage oneself, the claimant has mild limitation.

[TR 18].  In addition to issuing a specific finding on the four functional areas, Plaintiff's argument ignores that the ALJ explained these findings on the same page in her determination, discussing at length Plaintiff's treatment history in the immediately preceding paragraphs to the findings:

> Nurse practitioner Brittany Brown, NP with the office of Robert Hernandez, M.D. examined the claimant on September 6, 2018 (Exhibit 13F/9). The claimant denied experiencing symptoms of depression or anxiety on that date (Exhibit 13F/12). Upon mental status examination, NP Brown described the claimant's mood and affect as "normal." She detected no "diffuse anxiety." However, she diagnosed the claimant with chronic anxiety and continued him on the previously prescribed antidepressant Trintellix and the anxiolytic Xanax (Exhibit 13F/13).
>
> At the claimant's next visit on October 17, 2018, NP Brown again reported that the claimant exhibited normal mood and affect and no diffuse anxiety (Exhibit 13F/9). However, based on the claimant's report that Xanax currently was not effective, NP Brown prescribed an increased dosage (Exhibit 13F/9).
> NP Brown continued the claimant on Xanax at his December 3, 2018, visit (Exhibit 13F/68). The claimant confided at his January 16, 2019, visit that he had stopped taking Trintellix (Exhibit13F/60). The treating nurse practitioner diagnosed the claimant with major depressive disorder, single episode, for which she prescribed escitalopram (Exhibit 13F/64).

> No State agency medical or psychological consultant rendered a prior administrative finding regarding the severity of the claimant's diagnosed mental impairment.

[TR 18].  The ALJ fully discussed Plaintiff's psychiatric treatment history, which Plaintiff even admitted in his brief was "sparse" at best and that Plaintiff did not even mention these impairments in his applications (only apprising the agency of the conditions on appeal) [Dkt. 17 at 12-16].  The above explanation by the ALJ "show[ed] significant history, including examination . . .  and the functional limitations that were considered in reaching the conclusion."  20 C.F.R. § 404.1520a(e)(4).  Because the ALJ issued a specific finding about Plaintiff's limitations and properly explained her reasoning, the evidence indicates that the ALJ properly followed the special technique in analyzing Plaintiff's mental impairments, remand is not required on this second alleged point of error.

## CONCLUSIONS AND RECOMMENDATION

For the foregoing reasons, the Court recommends the Commissioner's decision be **AFFIRMED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge.  28 U.S.C. § 636(b)(1)(C).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district

court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 21st day of June, 2022.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE